IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAMUEL TEPPER, | |
| Plaintiff, | 4:21CV3033 |
| vs. | |
| TALENT PLUS, INC., | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment. (Filing No. 63.) For the reasons explained below, Defendant's Motion for Summary Judgment will be granted.

**BACKGROUND**

Samuel Tepper (Plaintiff), brought this action against Talent Plus, Inc. (Defendant), alleging claims for breach of contract, promissory estoppel, public policy wrongful discharge, and retaliation pursuant to Nebraska Fair Employment Practices, Act, (NFEPA) Neb. Rev. Stat. § 48-1114. (Filing No. 1-1.) After removing the case from the state court, Defendant moved to dismiss, and the Court partially granted the motion, dismissing the public policy wrongful discharge claim. (Filing No. 19.) Tepper is no longer pursuing the NFEPA claim. (Filing No. 81 at 27.) Thus, the only claims remaining for consideration on Defendant's Motion for Summary Judgment are breach of contract and promissory estoppel. (Filing No. 77 at 1.)

Defendant is a Nebraska corporation with its principal place of business in Lincoln, Nebraska. (Filing No. 1.) Plaintiff is a citizen of Illinois, residing in Chicago, and he claims damages in excess of $75,000. (Filing No. 1.) Accordingly, this Court has diversity jurisdiction over the Plaintiff's claims under 28 U.S.C. § 1332.

1

Plaintiff alleges Defendant breached an employment contract by terminating his employment and alternatively alleges a claim for promissory estoppel asserting he relied on representations made by Defendant to his detriment. (Filing No. 1-1.) Defendant argues it is entitled to summary judgment because the contract at issue was for at-will employment, and Defendant did not breach any reasonably specific promise in the contract for at-will employment. (Filing No. 64; Filing No. 85.)

## STATEMENT OF FACTS

Defendant hired Plaintiff to serve as its Executive Vice President of Growth. (Filing No. 65 at 1.) Defendant's chairman of the board, Doug Rath, contacted Plaintiff in July of 2019 to discuss the possibility of Plaintiff's employment, and after some negotiation, Plaintiff accepted Defendant's written offer of employment on November 22, 2019. (Filing No. 66-1 at 9, 118-123.) Rath began the offer stating, "We have carefully studied your counteroffer and have included your points in what we now know is our final offer. We want you at Talent Plus helping us grow internally and externally impacting the 100 million individuals." (Filing No. 66-1 at 118.)

The offer letter signed by Plaintiff provided the terms of his employment. (Filing No. 65 at 6; Filing No. 66-1 at 118-123.) It included detailed information regarding Plaintiff's salary, various bonus and incentive structures, a premium benefits package, profit sharing, as well as stock options and stock purchase opportunities. (Filing No. 66-1 at 118-123.) The letter advised Plaintiff that his performance would be measured primarily on the outcomes of eight benchmarks, all of which concerned growth and business development. (Filing No. 66-1 at 118-123.) Defendant promised an annual salary of $325,000 per year and "Guaranteed total compensation of $500,000 your first full year of employment". (Filing No. 66-1 at 118-123.)

Plaintiff did not ask Defendant to put a guaranteed term of employment in the contract. (Filing No. 66-1 at 12.) He believed the contract implied he would have time to make the changes to meet the outcomes required by Defendant. (Filing No. 66-1 at 9.) He thought the guaranteed salary of $500,000 his first year meant he would have a full year to accomplish the specified goals. (Filing No. 66-1 at 10.) According to Plaintiff, his belief that his employment was long term was also supported by the ten-year vesting period for his equity. (Filing No. 82-1 at 4.) However, Plaintiff testified there are no representations about his compensation and benefits that are found outside those specified in the employment agreement. (Filing No. 66-1 at 16.)

Prior to his employment with Defendant, Plaintiff worked at SalesForce, Inc. in Chicago, Illinois. (Filing No. 1-1 at 2.) When Plaintiff resigned his position at SalesForce, he gave up a guaranteed salary and other benefits, including a considerable amount of restricted stock units. (Filing 66-1 at 6, 116; Filing No. 82-1 at 3.)

Plaintiff began working for Defendant during the first week of January 2020 (Filing No. 65 at 6.) On January 22, 2020, Plaintiff signed a Confidentiality and Noncompetition Agreement that provided in relevant part, "Associate's employment is and shall be at will, and nothing in this agreement is intended to change that arrangement." (Filing No. 66-1 at 13.) Plaintiff also signed an acknowledgment that stated, "Employment with Talent Plus is at will and may be terminated at any time for any reason by you or Talent Plus, with or without notice or cause. Nothing in this document is intended to alter the at will nature of employment." (Filing No. 66-1 at 13.) Although Plaintiff signed the noncompetition agreement and acknowledgment, he did not think it changed Defendant's commitment to his effort to complete the goals specified in the November 22, 2019, agreement. (Filing No. 82-1 at 5.)

Defendant terminated Plaintiff's employment on February 10, 2020. (Filing No. 66-1 at 40.) According to Plaintiff, Defendant's discharge failed to satisfy their agreement because the goals it set forth could not have been completed in the six weeks he had been working. (Filing No. 66-1 at 9-10; Filing No. 82-1 at 5-6, 10.) Although there was no specific language promising a job through the age of retirement, Plaintiff believed the terms contained in the agreement suggested employment where he would potentially sunset his career. (Filing No. 66-1 at 16.) Other than failing to give him enough time to accomplish the goals specified in the agreement, Plaintiff did not believe there were any other written promises Defendant did not satisfy. (Filing No. 66-1 at 10.)

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence

3

of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.*

"On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit." *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quotation omitted). "The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quotation omitted).

### **Applicable Substantive Law**

Nebraska is the forum state and the state where the events giving rise to the cause of action occurred; therefore, this Court will apply the substantive law of the State of Nebraska. See, *Boudwin v. Hastings Bay Marina, Inc.*, 614 F.3d 780, 783 (8th Cir. 2010) (In diversity of jurisdiction actions involving matters of contract, the substantive law of the forum state applies.).

### **Breach of Contract**

In this jurisdiction:

Nebraska courts 'have consistently held that when employment is not for a definite term and there are no contractual, statutory, or constitutional restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses.' *Clark v. Kellogg Company*, 205 F.3d 1079, 1083 (8th Cir. 2000) (citing *Goff-Hamel v. Obstetricians & Gynecologists*, 256 Neb. 19, 588

4

N.W.2d 798, 801 (1999)). An employer does not incur liability for breach of contract by terminating an offer for employment for an indefinite time. *Id.*

*Gilmore v. Woodmen Acc. & Life Co.*, 357 F.Supp.2d 1189, 1193 (D. Neb. 2005).

In this case, the November 22, 2019, letter is the written agreement of Plaintiff's employment by Defendant. (Filing No. 1-1 at 10; Filing No. 1-4.) There is no provision for a fixed term of employment, and Plaintiff testified he did not ask Defendant to include a definite term for his employment. (Filing No. 66-1 at 12.)

Defendant argues because the agreement does not contain a fixed term of employment or any other restrictions on the right of discharge, Plaintiff was employed at will. (Filing No. 64 at 3.) Thus, Defendant could discharge Plaintiff for any reason and at any time without incurring liability for breach of contract. (Filing No. 64 at 3.) Defendant further argues Plaintiff affirmed his at will employment status when he signed the noncompetition agreement and acknowledgment of that status. (Filing No. 64 at 11.) Because Plaintiff was employed at will, Defendant argues it is entitled to summary judgment on Plaintiff's breach of contract claim. (Filing No. 64 at 11.)

Plaintiff contends the employment agreement implied he was promised a fixed term of employment of at least a year, and Defendant breached the contract when it terminated Plaintiff's employment six weeks after he started work. (Filing No. 66-1 at 9-11; Filing No. 82-1 at 5-6, 10.) According to Plaintiff, he believed the goals outlined in the November 22, 2019, letter would require at least a year to be fulfilled, and Defendant's termination of his employment constituted a breach. (Filing No. 80 at 5-8.)

The written employment agreement does not contain a fixed term of duration for Plaintiff's employment, and Plaintiff admitted he did not request Defendant include a definite term. Plaintiff has not presented any evidence that could reasonably be construed as a promise for anything other than at will employment. Plaintiff's subjective belief that the November 22, 2019, agreement created an implied contract of employment for at least a year is not sufficient to establish a fixed term of employment. See, *Gilmore*, 357 F.Supp.2d at 1195 ("Here, the plaintiffs, at best, have only indicated a subjective understanding of 'job security' which is not sufficient to establish an implied contract of employment terminable for cause."). Furthermore, Plaintiff has presented no evidence

5

to controvert his affirmation in the noncompete agreement and acknowledgment of his at-will employment status.

The November 22, 2019, agreement between Plaintiff and Defendant was for at-will employment, and no breach occurred when Defendant terminated Plaintiff's employment. Consequently, Defendant is entitled to judgment as a matter of law on this issue.

**Promissory Estoppel**

A promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994), "However, when an unambiguous contract exists that covers the issue on which damages are sought, promissory estoppel is not a viable theory of recovery." *Gilmore*, 357 F.Supp.2d at 1196 (citing *Folgers Architects Limited v. Kerns*, 262 Neb. 530, 538, 633 N.W.2d 114, 121 (2001)).

In *Gilmore*, terminated employees sued their employer asserting breach of contract, promissory estoppel, and other claims. The employer moved for partial summary judgment on the breach of contract, promissory estoppel, and two other claims. After considering the filings, relevant materials and legal authority, the court determined the defendants' motion should be granted. *Id.* at 1191. Because the contracts at issue were at-will, there was no breach when the defendants terminated them, and the defendants were entitled to summary judgment on that claim. *Id.* at 1195. The court also found the plaintiffs' claim for promissory estoppel failed as a matter of law, "because (1) the parties entered unambiguous employment at-will contracts; (2) no breach occurred when those contracts were terminated; … (3) plaintiffs have been paid for all their services under the contracts … [and] there are no additional promises that need to be enforced." *Id.* at 1196.

In the case at bar, as in *Gilmore*, (1) the agreement at issue is a contract for at-will employment, (2) no breach occurred when Defendant terminated Plaintiff's employment, and (3) Defendant's obligation under the contract for at-will employment was fulfilled when Plaintiff started work in January of 2020, and there are no other reasonably specific promises in the contract for at-will employment that need to be enforced. Consequently, Plaintiff's claim for promissory estoppel fails as a matter of law.

**Conclusion**

Viewing the evidence in the light most favorable to Plaintiff, the Court finds he was employed at-will by Defendant, and no breach of contract occurred when Defendant terminated his employment. There are no genuine issues of material fact with respect to Plaintiff's breach of contract claim or with respect to his claim for recovery under promissory estoppel. Thus, Defendant is entitled to summary judgment.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment ([Filing No. 63.](#)) is granted.
2. Plaintiff's objection to the Magistrate Judge's order ([Filing No. 78.](#)) is overruled as moot.
3. A separate judgment will issue.

Dated this 7th day of March, 2025.

BY THE COURT:

*Susan M. Bazis*
Susan M. Bazis
United States District Judge